# WILLIAM J. GUNBY, Appellant, v. U. G. HAYDEN, Respondent.

## Kansas City Court of Appeals, July 6, 1914.

STAKEHOLDER OR DEPOSITARY: Contracts: Right to Sue Depositor. Two parties contracted to exchange lands, one of them to pay the other $1500 in cash, and did pay him $500. When they went to close the trade the other could not do what he had agreed to do. They, therefore, made a new contract of exchange whereby the one was to still pay $1500 of which sum he had already paid $500. Upon the execution of the new contract, this party put up with plaintiff as a depositary his check for the remaining $1000 and the other put up his check for $500. The depositary was to hold said checks until the trade was consummated and then use them when notified by the giver of the $1000 check. The depositary being led by the other contracting party to think the trade had been effected, used the checks by applying them upon a debt of the one to whom the $1500 was to be paid, and in doing this sent the checks to their respective banks for collection. The other party to the land trade learning of this and knowing that the trade had not been perfected, stopped payment upon his check. Whereupon the other stopped payment also on his. The depositary then turned over to the one his $1000 check but held on to the other check and brought suit on it although the party whose check had been returned had brought suit against the other to enforce specific performance. *Held*, that plaintiff depositary could not recover.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis*, Judge.

AFFIRMED.

*Scott J. Miller* for appellant.

*Fred S. Hudson* and *Lewis A. Chapman* for respondent.

TRIMBLE, J.—The petition herein is in three counts. In the first, plaintiff alleges that he held in

escrow defendant's check for $500 which was good and worth that sum, and that defendant wrongfully directed plaintiff to make payment of said check and thereby got the money out of plaintiff's hands and rendered plaintiff liable therefor. The second count alleges that defendant deposited with plaintiff the sum of $500 in a check on the Citizens National Bank of Ness City, Kansas, drawn by defendant, payable to plaintiff, under and by virtue of a contract between defendant Hayden and one, Levi T. Lee; that plaintiff cashed the check, but that defendant stopped payment thereon causing plaintiff to become liable by virtue of his trusteeship, to the amount of said check. The third count alleged that defendant gave plaintiff a check for $500 on the Citizens National Bank of Ness City, Kansas, to be held by him and the money represented thereby to be used only "when contracts and deeds are passed, and on order of L. T. Lee;" that pursuant to a contract and agreement made by defendant at the time said check was given, plaintiff placed said check for collection, but defendant stopped payment on it although the check was good and money was in the bank to pay same, wherefore it is alleged that "by and under the agreements heretofore plead" defendant is indebted to plaintiff for $500 the value of the check and $1 protest fees which plaintiff paid.

The petition nowhere alleges what the contract between Lee and Hayden was, nor why the check for $500 was deposited with plaintiff, nor what plaintiff was to do with the money called for by the check. It is clear that plaintiff was merely to hold the check in escrow until some contract between Lee and Hayden was performed. The facts showing how plaintiff has become liable for the value of the check, or to whom, are not stated. The inference is that defendant, by deceiving plaintiff, got him to part with the check in some way when he should not have done so, and that by reason thereof plaintiff has become liable

to some one, presumably Lee. But it also clearly appears that it is not plaintiff's act in parting with the check in order to cash it that has caused the trouble, but defendant's act in stopping payment thereon. Consequently, if the check was held by plaintiff for Lee's benefit in certain contingencies, plaintiff has done nothing to cause a liability to arise from him to Lee, but defendant's wrongful act in stopping payment on the check may render defendant liable to Lee if the latter is entitled to the money thereon under the terms of the undisclosed contract referred to in the petition.

If, on the other hand, defendant's check was to be used by plaintiff in paying a debt of defendant's, owed to plaintiff or some one else, when the undisclosed contract between Lee and Hayden had been performed, certainly plaintiff's right to so use the check would not arise until that contract had been performed, and plaintiff's *attempt* to use the money by cashing the check would not create a liability from plaintiff to some one else when it was not what he had done but defendant's act in stopping payment on the check that had caused the trouble. If plaintiff has attempted to pay a debt of defendant's to him with the check, his right to do so cannot come into being until the trade between Lee and Hayden is completed; and if plaintiff has been misled into thinking it was completed when it was not and has attempted to apply the money called for by the check toward the payment of a debt defendant owes him, but has been prevented from doing so by defendant's stopping payment on the check, then defendant's liability to plaintiff is not on the check but on the original debt defendant owes him, since, in such case, no payment has been made on that debt. These remarks are made, not as bearing on the question of what is the proper suit to be brought against defendant, or by whom, but merely by way of calling attention to the difficulties presented by the pleading. It

would seem that defendant is right in his contention that the petition states no cause of action.

But inasmuch as the case was tried and the evidence gone into, we will examine it to see whether or not a case can be made against defendant by amendment. If so, the judgment may be reversed and remanded so that this may be done.

On June 8, 1911, the defendant Hayden entered into a written contract with one Levi T. Lee. Hayden, as first party, agreed to convey to Lee certain land in Hodgeman county, Kansas, subject to a mortgage not to exceed $14,000 to be negotiated by Hayden. Lee on his part agreed to convey to Hayden certain land in Morgan county, Colorado, subject to a mortgage of $15000 to be given by Hayden to Lee. And Lee, in addition to conveying his land, was to pay Hayden $1500, of which $500 was paid by Lee to Hayden in cash at the time the contract was signed, receipt whereof was acknowledged, and the remainder, $1000, was to be paid when the contract was fully completed and deeds exchanged.

The two men met in Chillicothe to close the trade, but it was there found that Hayden had been unable to have the mortgage on his land extended as he had agreed to do. Thereupon on the twentieth day of June, 1911, they entered into a new written contract in lieu of the old one whereby Hayden, as first party, agreed to convey his land in Hodgeman county, Kansas, to Lee subject to a mortgage of $10,000 to be negotiated by Hayden. And Lee on his part agreed to convey the same amount of land as before, but not quite the same land, in Morgan county, Colorado, subject to a mortgage of $11,000 to be given by Hayden to Lee on a part of said land. In addition to this, Lee agreed to pay Hayden $1500, of which amount $500 was acknowledged as having been received, and $1000 was to be paid "when this contract has been fully completed and deeds exchanged."

The $500 mentioned in this contract was the same $500 referred to in the old one as having been paid by Lee to Hayden. The parties were, therefore, *in the same situation as before* except that a slightly different contract was in force. But otherwise their relative situations were the same. Hayden had $500 of Lee's money which Lee had paid on the trade, and certain things were to be done by each and deeds were to be exchanged in the future.

It was here that the checks were put up with plaintiff. Just why it was done, or what plaintiff was to do with them does not clearly appear. However, Hayden executed his check to plaintiff for $500 and put it up with him, and Lee executed his check for $1000 to plaintiff and put it up. The receipt plaintiff gave defendant for his check says he received the "check for $500.00 to be held with check of $1000.00 of L. T. Lee, *to be used only when contract and deeds are passed and on order of L. T. Lee.*"

The evidence as well as the pleadings show that plaintiff was merely to hold these checks in escrow so to speak. If now the trade went through, the money represented by the checks would all belong to defendant. And plaintiff would be required to apply it where defendant directed or turn it over to him. If, however, the trade fell through, presumably plaintiff would cash defendant's check and turn the money over to Lee, thus giving Lee back his money that he had paid to defendant on the eighth day of June, 1911, when the first contract was made, and would also give Lee back his $1000 check. However, even if the trade was not consummated, yet, so long as Lee was insisting on specifically enforcing it, he would not be entitled to get his money back but would be in the position of having paid $500 and offering to pay the balance, $1000. But if the trade fell through and Lee was not seeking to specifically enforce but was demanding his $500 back, plaintiff could either turn over to Lee the de-

fendant's $500 check or cash it and turn him over the money.

With matters in this shape let us see what the parties did, as soon as the checks were put up. After doing this, the parties, Hayden and Lee, went to Illinois in an effort to close the land trade. While they were there they did not succeed in doing so, but notwithstanding this fact, Hayden wrote plaintiff that he had delivered Lee a deed to the land from him and to send on the deeds coming to him as soon as Lee got there and explained things. It seems that Hayden owed plaintiff some money or else owed a bank in Chillicothe a debt which plaintiff was interested in getting paid. On the same date (June 23, 1911), that Hayden wrote plaintiff that the trade had gone through, plaintiff telegraphed Hayden that ''Bank demands money today; refuses to wait longer. Shall I pay the fifteen hundred. Answer.'' To which defendant telegraphed in reply ''Yes. Pay fifteen hundred.'' Apparently the letter, or postal card, saying the trade had gone through had not reached plaintiff at this time as it had not had time, as all three communications were on the same day. But plaintiff treated the answer to his telegram as a statement that the trade had gone through and evidently offered the card in evidence in confirmation of that theory. Thinking the trade had gone through, but having no word from Lee that it had done so, plaintiff deposited both checks in the bank for collection. The inference is that he applied the checks to the payment of the $1500 debt owed by defendant and referred to in the defendant's telegram. But Lee discovered that this had been done and, knowing the trade had not gone through, stopped payment on his $1000 check and thereupon defendant stopped payment on his check for $500. After Lee's $1000 check was protested, it was turned over to Lee by the bank at plaintiff's direction. This was done about June 24, 1911, and from about that time until January 16, 1912, plain-

tiff held defendant's check for $500 but had given up Lee's $1000 check. On this last named date, however, Lee seems to have voluntarily given plaintiff a new check for $1000 endorsed on the back of which is the following: "The within check is in lieu of a certain check of like amount left in escrow with W. J. Gunby June 20, 1911." This, however, was done after the institution by Lee of his suit for specific performance of the contract to exchange land, which suit is yet pending in the district court where the Hayden land lies.

The situation then is this: Plaintiff held two checks in escrow to be turned over to defendant if the trade went through, and presumably the $500 check was to be turned over to Lee if it ultimately failed. Plaintiff, after attempting to cash both checks but failing because payment was stopped on each, allows Lee to withdraw his but keeps defendant's and now sues on it, although his duty in the premises was merely to hold both checks until the trade is finally consummated, and that is yet undetermined since Lee is insisting that it be specifically performed. Plaintiff got no money and lost none. There is no right of recovery shown to be in him, and the judgment was right. It is affirmed. All concur.